# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**SUZZETTE M. WELCH,**

        **Plaintiff,**

v.   Case No: 6:20-cv-1256-DCI

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM OF DECISION[1]

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying her application for disability insurance benefits. In a decision dated September 26, 2019, the Administrative Law Judge (ALJ) found that Claimant had not been under a disability, as defined in the Social Security Act, from March 18, 2017, the alleged disability onset date, through December 31, 2017, Claimant's date last insured.[2] Having considered the parties' memoranda and being otherwise fully advised, the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **AFFIRMED**.

**I.   Issues on Appeal**

Claimant makes the following four arguments on appeal:

1) The ALJ failed to adequately support his rejection of Dr. Nimbargi's opinion. *See* Doc. 28 at 26.

2) The ALJ failed to properly evaluate Claimant's testimonial evidence. *See* Doc. 28 at 28.

---

[1] The parties consented to the exercise of jurisdiction by a magistrate judge. Doc. 18.

[2] At the hearing, Claimant amended the onset date to March 18, 2017. R. 31.

3) The ALJ failed to properly consider the entirety of the record. *See* Doc. 28 at 26–27.

4) The ALJ failed to properly consider the combined effect of Claimant's impairments. *See* Doc. 28 at 47.

## II.   Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III.   Discussion

### A.  Dr. Nimbargi's Opinion

Here, Claimant argues that the ALJ erred in discounting the opinion of Dr. Nimbargi. The Court rejects this argument.

At step four of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of the treating, examining, and non-examining medical sources. 20 C.F.R. §§ 404.1545(a)(1), (3); 416.945(a)(1), (3); *see also Rosario v. Comm'r*

*of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).[3] The consideration of medical source opinions is an integral part of steps four and five of the sequential evaluation process.

The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Claimant filed her claim after March 22, 2017,[4] 20 C.F.R. § 404.150c and 20 C.F.R. § 416.920c are applicable in this case. Under these provisions, an ALJ must apply the same factors in the consideration of the opinions from all medical sources and administrative medial findings, rather than affording specific evidentiary weight to any particular provider's opinions. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The ALJ must consider: 1) supportability; 2) consistency; 3) relationship with the claimant;[5] 4) specialization; and 5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

---

[3] Here, in assessing the Claimant's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with the following limitations: The claimant can frequently balance, stoop, kneel, crouch, crawl, and climb stairs and ramps. The claimant is limited to frequently handling and fingering with her bilateral upper extremities. The claimant must avoid concentrated exposure to extreme cold temperatures, wetness, humidity, and pulmonary irritants.

R. 34.

[4] Claimant filed her claim on November 7, 2017. R. 31.

[5] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extend of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those two factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.[6] In other words, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record—familiar concepts within the framework of social security litigation.

The ALJ may, but is not required to, explain how the ALJ considered the remaining three factors (relationship with claimant, specialization, and "other factors"). 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) ("The new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.'") (quoting *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2017) (per curiam) and citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same)).

---

[6] The regulations provide, in relevant part, that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1)–(2); 416.920c(c)(1)–(2).

The ALJ stated the following with respect to Dr. Nimbargi's opinion:

The undersigned considered a November 20, 2017 Medical Source Statement of Claimant's Physical Abilities completed by the claimant's treating physician, family medicine doctor, Stephen Nimbargi, M.D. (Ex. 11F). Dr. Nimbargi noted an impairment of fibromyalgia. He opined the claimant could work less than 4 cumulative hours in an 8-hour workday. She could occasionally lift 1-10 pounds, but never more than 10 pounds. The claimant could stand and walk less than 2 hours' total in an 8-hour workday. The claimant could stand and walk greater than one hour at one time without interruption. The claimant could sit 2 to less than 4 hours' total in an 8-hour workday, and greater than one hour at one time without interruption. Dr. Nimbargi did not assess postural limitations, or limitations with regard to the use of the arms/hands. No environmental limitations were assessed. The claimant's conditions would require 2-4 unplanned absences per month. Dr. Nimbargi noted no side effects were established as a result of medication or treatment.

Contrarily, the record also documented a second medical source statement, also dated November 20, 2017 from Dr. Nimbargi, related to the claimant's impairment of hypothyroidism and diabetes mellitus, type II. In this statement, Dr. Nimbargi opined the claimant could work 4-6 cumulative hours in an 8-hour workday, sit, stand, or walk less than 2 hours total, and 15-30 minutes at one time (Ex. 12F).

The undersigned finds Dr. Nimbargi's opinion is not persuasive in this determination. Similarly, the opinion is not consistent with his exam findings as noted above, and is not consistent with the claimant's reported activities of daily living, which included working out at the gym and walking three miles, five times a week.

. . .

The record further documented an April 2018 rheumatology medical assessment from primary care provider, Dr. Stephen Nimbargi, who noted the claimant was affected in 4 of 18 tender points as classified by the American College of Rheumatology. Although this assessment is beyond the date last insured, the undersigned considered the assessment for completeness, as Dr. Nimbargi has been the claimant's primary care physician since she established care in December 2016 (See 13F/2). Dr. Nimbargi reports the claimant's pain is precipitated by over-exertion. Dr. Nimbargi opined the claimant pain would be expected to cause more than 4 unexpected absences per month, and she would need unplanned breaks of 1-10 minutes every 2 hours or more. In this statement, Dr. Nimbargi opined the claimant could occasionally reach or twist with her hands, and occasionally handle, finger, feel, write or type with her right hand (Ex. 15F).

- 5 -

> As above, the undersigned finds Dr. Nimbargi's statement regarding the claimant's limitations are not supported by his very physical findings, and are not persuasive in this determination. The undersigned notes in particular, the findings represent a significant change from the November 20, 2017 statements, and the changes are not reflected or documented in his objective/physical findings. The undersigned notes also, that the exam findings do not meet the criteria to establish fibromyalgia pursuant SSR 12-2p. Finally, the undersigned notes that the treatment entries do not establish the claimant's pain or symptoms have caused unexpected absences from activities, and the recommended breaks of 1-10 minutes every two hours are recognized as normal breaks from most any employer.

R. 37–39.

The ALJ found Dr. Nimbargi's medical source statements to be inconsistent with Dr. Nimbargi's own exam findings. *Id.* Indeed, the ALJ even found that two of Dr. Nimbargi's source statements—dated the exact same day—were inconsistent with each other. For example, Dr. Nimbargi opined that Claimant could not work more than four cumulative hours in a workday. *See* R. 443. However, the ALJ noted that Dr. Nimbargi's contrary source statement—dated the same day—stated Claimant could work from four to six cumulative hours in a workday. R. 38. Thus, after considering Dr. Nimbargi's source statements and findings the ALJ found the opinion unpersuasive. R. 38.

Further, the ALJ explained that Dr. Nimbargi's source statements are also inconsistent with the record evidence. R. 38. For example, Dr. Nimbargi opined that Claimant can stand and walk for less than two hours, sit two to four hours, and occasionally lift one to ten pounds. R. 37. However, the ALJ found that this was inconsistent with the Claimant's "reported activities of daily living, which included working out at the gym and walking three miles, five times a week."[7] R.

---

[7] Claimant also argues that the ALJ misrepresented Claimant's testimony. R. 26, 28. However, the Claimant did state that she walks three miles, five times a week both during the hearing (R. 63–64) and in reporting to her doctor (R. 460, 490). The ALJ noted this in the decision. R. 35, 37. Thus, it is unclear to the Court how the ALJ misrepresented Claimant's testimony.

38. Consequently, the ALJ found Dr. Nimbargi's source statements inconsistent with the record evidence.

In sum, the ALJ found Dr. Nimbargi's medical source statements to be inconsistent with each other, unsupported by Dr. Nimbargi's own exam findings, and inconsistent with the record evidence. Claimant's arguments to the contrary essentially ask the Court to reweigh the evidence, which is not this Court's function.[8] *Winschel*, 631 F.3d at 1178. The ALJ's findings as to Dr. Nimbargi's opinion are supported by substantial evidence, and thus the Court finds no reversible error.

**B. Claimant's Testimony**

Next, Claimant argues that the ALJ failed to support her analysis of Claimant's subjective complaints with substantial evidence. The Court rejects this argument.

An individual seeking disability benefits has the burden to prove she is disabled and unable to perform her past relevant work. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through his or her own testimony must show:

---

[8] Claimant also perfunctorily argues that the ALJ did not "properly consider all of the medical opinions, on record, specifically those . . . from Lowell General Hospital. *See* Doc. 28 at 26. As an initial matter, this perfunctory argument is waived. *See e.g., Jacobus v. Comm'r of Soc. Sec.*, 2016 WL 6080607, at *3 n.2 (11th Cir. 2016) (stating that claimant's perfunctory argument was arguably abandoned). But even considering the argument, the Lowell General Hospital documents appear to be medical records from two separate emergency room visits. *See* R. 274–303; 318–379. If there are medical opinions expressed in these records, Claimant does not point the Court to where—within the nearly 100 pages—any medical opinions are expressed. *See, e.g., Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 602 n.6 (11th Cir. 2017). Further, the ALJ did explicitly reference the records from Claimant's second emergency room visit. *See* R. 36, 318–379. Accordingly, the Court rejects this argument.

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam); *see also* 20 C.F.R. § 404.1529 (setting out standards for evaluating pain and other symptoms).

If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1).  In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id.* at § 404.1529(c)(1)–(3).  "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995).  The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *See id.* at 1562 (11th Cir. 1995).

Here, the ALJ found that "[C]laimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." R. 37.  The ALJ provided further explanation in support of her credibility determination as follows:

> [Claimant's statements concerning the intensity, persistence, and limiting effects of symptoms] are inconsistent because treatment entries in the record reflect generally conservative treatment and overall relief of symptoms with medication (See Ex. 14F/8, 13, 15, & 24). More importantly, the claimant reports the ability to regularly engage in physical activities, including going to the gym, and walking 3 miles five

> times a week (See Ex. 13F/14 & 14F/12). Additionally, the claimant's subjective complaints are not supported by objective and diagnostic findings in the record, certainly not to the extent to which she alleges, as primary care exam findings are generally benign, the brain CT and venous Doppler were negative. A careful review of the evidence reveals no related significant findings on subsequent exams status post treatment with meds for alleged fibromyalgia. Accordingly, the undersigned has appropriately considered the claimant's subjective complaints and medically documented functional limitations in the residual functional capacity assessment, through the date last insured.

R. 37.

The Court finds that the ALJ provided explicit and adequate reasons for rejecting Claimant's subjective complaints. First, the ALJ cited record evidence and explained how that evidence was inconsistent with Claimant's testimony. R. 37. For example, the ALJ noted that Claimant's complaints are inconsistent with the generally conservative treatment and the overall relief of symptoms with medication. R. 37. Additionally, the ALJ noted that Claimant's complaints are inconsistent with the generally benign primary care findings, such as the brain CT and venous Doppler tests being negative. R. 37. The ALJ also considered Claimant's activities of daily living. R. 37. For example, the ALJ noted that Claimant reported the ability to engage in physical activities, such as going to the gym and walking three miles five times a week. R. 37.

Thus, the ALJ found Claimant's subjective complaints inconsistent with the record evidence and supported his determination with substantial evidence. R. 37. Claimant's arguments to the contrary essentially ask the Court to reweigh the evidence, which is not this Court's function. *Winschel*, 631 F.3d at 1178. The Court finds no error with respect to the ALJ's credibility finding.

### C. The Record as a Whole

Claimant argues that the ALJ erred by not properly considering the record as a whole. Specifically, Claimant argues that (1) there is evidence supporting a finding of disability and (2) the ALJ did not consider portions of the record. The Court rejects both of these arguments.

Claimant's first argument consists of, essentially, pointing out various pieces of the record that arguably support a finding of disability. *See* R. 25–31. But "[u]nder a substantial evidence standard of review, [Claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

Claimant also argues that the ALJ did not specifically reference some pieces of evidence in the record. It appears this argument is related to the preceding argument and goes as such: there is evidence in the record that supports a finding of disability, and the ALJ did not explicitly reference some of that evidence; therefore, the ALJ did not consider the entirety of the record. The Court finds this argument unpersuasive for the same reasons as the first argument. *See Sims*, 706 F. App'x at 604 (11th Cir. 2017) ("[Claimant] must do more than point to evidence in the record that supports her position."). Further, some evidence Claimant asserts that the ALJ did not consider was explicitly referenced and reflected in the decision. For example, Claimant asserts that the ALJ discounted medical limitations on hand use. However, the ALJ found that Claimant's right carpal tunnel syndrome was a severe impairment and limited Claimant to "frequent" handling and fingering with bilateral extremities. R. 33, 34.

Altogether, despite Claimant's assertions to the contrary, the ALJ stated that he considered the whole record. R. 32, 33, 34; *see Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808–09 (11th Cir. 2013) ("[T]he ALJ stated that he considered the record in its entirety, and [the ALJ] was not required to discuss every piece of evidence in denying [Claimant's] application for disability benefits.").

The ALJ's decision shows that the ALJ considered the record as a whole. Claimant has not persuaded the Court otherwise. Thus, the Court finds no reversible error.

### D. Combination of Impairments

An ALJ "must consider every impairment alleged." *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (internal citations). "Where a claimant has alleged several impairments, the Commissioner must consider the impairments in combination and determine whether the combined impairments render the claimant disabled." *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015) (citing *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)). "An ALJ's statement that it has considered a combination of impairments is adequate to meet this standard." *Id.*

In assessing the combination of impairments, the ALJ stated that:

Through the date last insured, the *claimant did not have an impairment or combination of impairments* that met or medically equaled the severity of one of the listed impairments . . . .

The claimant's physical impairments, *considered singly and in combination*, do not meet or medically equal the criteria of any of the listed impairments. In making this finding, the undersigned considered, in particular, the listings found under Section 1.00 (*Muscoloskeletal System*), and 11.00 (*Neurological Disorders*) . . . .

The claimant has a medically determinable impairment (MDI) of obesity. In evaluating his/her obesity, the undersigned has carefully considered Social Security Ruling 19-2p regarding the *functional limitations imposed either alone or in combination with any other medically determinable impairment(s)* (MDI).

Although the claimant has been diagnosed with impairments that are analyzed under the aforementioned listings, the medical records do not demonstrate that all additional requirements set forth by any of the pertinent paragraphs of any of the aforementioned listings have been met. Furthermore, no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment (20 CFR 404.1520(c)).

R. 34 (emphasis added).

Panels of the Eleventh Circuit have repeatedly upheld nearly identical statements by ALJs; finding that such a statement evidences consideration of the combined effect of a claimant's impairments.[9]  *See Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (finding the following statement evidenced consideration of the combined effect of a claimant's impairments: "based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, or a combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months"); *see also Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (finding the following statement evidenced consideration of the combined effect of a claimant's impairments: "while [claimant] 'has severe residuals of an injury to the left heel and multiple surgeries on that area,' [claimant] does not have 'an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4'"); *Wilson v. Barnhardt*, 284 F.3d 1219, 1225–1226 (11th Cir. 2002) (finding the following statement evidenced consideration of the combined effect of a claimant's impairments: "the medical evidence establishes that [Wilson] had [several injuries] which constitute a 'severe impairment', but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4").

---

[9] While Circuit panels have repeatedly upheld *Wheeler* and *Jones* as the applicable standard; the Court recognizes that there may be some tension between these cases and other Circuit precedent. *See Hearn*, 619 F. App'x at 895 (11th Cir. 2015) (citing *Jones*, 941 F.2d at 1533 (11th Cir. 1991); *cf. Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) ("[I]t is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments.").

Here, the ALJ stated that he considered Claimant's impairments singly and in combination. This statement is "adequate to meet [the] standard." *Hearn*, 619 F. App'x at 895 (11th Cir. 2015). Accordingly, the Court finds no reversible error.

## IV. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on de novo review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the Commissioner's decision is due to be affirmed.

For the stated reasons, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment for the Commissioner and close the case.

**ORDERED** in Orlando, Florida on November 5, 2021.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE